UNITED STATES of America
v.
Anthony PASSERO, Defendant.
Cr. 46020.

United States District Court
E. D. New York.
July 22, 1960.

Cornelius W. Wickersham, Jr., U. S. Atty., E.D. New York, Brooklyn, N. Y., for the United States; Francis W. Rhinow, Asst. U. S. Atty., Greenport, N. Y., of counsel.

Jerome Lewis, Brooklyn, N. Y., for defendant.

BARTELS, District Judge.

Two motions, one by defendant for a new trial on the ground that the complaint of Fred T. Dick, a United States Narcotic Agent, on which the warrant of arrest against defendant was issued, was false and fraudulent, and the other by the United States Government for an order revoking the bail of the defendant and for remand.

On September 14, 1959 defendant was arrested on the authority of a warrant issued May 8, 1959 by a U. S. Commissioner for the Eastern District of New York, was arraigned on September 15, 1959 and held on bail. The affidavit or complaint on which the arrest warrant was issued, was made by Dick and sworn to before the Commissioner on May 8, 1959. The affidavit described the sale by one Vincent Papa and the defendant on August 27, 1958 of a narcotic drug contrary to law (Title 21 U.S.C.A. § 174; Title 18 U.S.C. § 2). The pertinent portion of this affidavit reads as follows:

"That the source of your deponent's knowledge is a conversation had between William H. Newkirk

and Anthony Passero, one of the defendants herein, in which Newkirk related to your deponent that he had placed an order with Passero for the above-mentioned amount of heroin; personal observations by your deponent in which your deponent observed Vincent Papa, also known as Charles Rinaldi, and Anthony Passero together on the northeast corner of 42nd Road and Crescent Street in Long Island City, Queens, N. Y.; *your deponent further observed Anthony Passero walk across the street and meet William Newkirk and hand the above-mentioned heroin to him and observed Passero take money in exchange therefor;* deponent further observed the defendant Passero rejoin Papa on the above-mentioned corner and saw both defendants leave in a 1949 grey cadillac." (Emphasis added.)

Defendant was tried for making two sales of a narcotic drug in violation of law, one on October 15, 1958 and the other on August 27, 1958. Only the sale on August 27, 1958 is involved in this application. Concerning this sale the Government offered the testimony of three United States Narcotic Agents, William H. Newkirk, Arthur S. Fluhr and Fred T. Dick, together with the testimony of a "special Government employee", Charles Williams (then serving a five-year sentence for violation of narcotic laws). Newkirk testified that at the instruction of Dick he and Williams made a telephone call at 11:50 p. m. on August 26, 1958 from New York to defendant and made an appointment to meet defendant later in Long Island City for the purpose of purchasing two pieces of heroin for $220; that pursuant to this appointment Newkirk and Williams drove to Crescent Street and 42nd Road, Long Island City and met defendant in front of 42–38 Crescent Street; that defendant then came to the car driven by Williams in which Newkirk

was a passenger and handed Newkirk a newspaper enclosing two cellophane envelopes which contained a white substance; that thereupon Newkirk delivered to defendant $220; that defendant walked across the street and later Newkirk saw defendant and Papa driving in the vicinity in a grey Cadillac car; that Newkirk then returned to Manhattan about 12:15 a. m. on August 27th and surrendered to Dick the newspaper and cellophane envelopes (pp. 46–48)*.

Agent Fluhr testified that on August 26, 1958 at about 11:50 p. m. he saw defendant enter a telephone booth in the Cocoanut Inn, Long Island City, and saw him leave the Cocoanut Inn, enter a Cadillac car and drive to Crescent Street and 42nd Road where defendant parked (p. 50).

Agent Dick testified that on August 26, 1958 he gave Newkirk $250 of Government's funds and later that evening drove to Crescent Street and 42nd Road, Long Island City, where he saw defendant and Papa enter a Cadillac car and that thereafter he met Newkirk and Williams in Manhattan and received from Newkirk the newspaper and envelopes which after field tests showed positive results (pp. 53–54). On cross-examination Dick stated that he observed the meeting that night but did not know what took place. His testimony in part was as follows:

"Q. And you don't know anything of your own personal knowledge of what took place on August 27th, 1958, do you? A. Nothing other than—

"Q. Not what somebody told you, your personal knowledge. A. I was going to say, sir, that I have nothing other than what I observed on that night.

"Q. Did you observe any money being passed from Newkirk to Passero? A. No, sir, I observed merely the meeting.

---

* Except in the case of specific references to the available record of witnesses' testimony indicated by the letter "R", references are to the summation of testimony in the Court's charge.

"Q. Did you observe any narcotics being passed from Passero to Newkirk? A. No, sir, I did not." (R. 49–50).

Dick further testified that he placed defendant under arrest on September 14, 1959 at 21–63 27th Street, Astoria, at which time and place he had a conversation with defendant wherein defendant stated that he had intended to give himself up the following day and that he would turn the 1950 Dodge Coupe (another car driven by defendant and claimed to have been used for transportation of narcotics) over to Dick because he did not want his brother (the owner of the 1950 Dodge Coupe) to suffer for what he had done (pp. 56–57).

"Special employee" Williams testified that after he and Newkirk made a telephone call to defendant from New York on August 26, 1958, about 11:50 p. m., he drove Newkirk to Crescent Street, Long Island City, Queens, where he saw defendant and that when the car he was driving stopped at Crescent Street defendant came over and passed a package to Newkirk and Newkirk handed defendant $220. On cross-examination a number of discrepancies appeared in Williams' testimony but not in this respect (pp. 69–71).

Defendant took the stand and denied the allegations of the indictment and the testimony adduced on behalf of the Government in any way implicating him with respect to the possession, sale or transportation of narcotics and denied that he had ever made the statement attributed to him by Dick, after his arrest in September, that he had intended to give himself up the next day or that he did not want his brother to suffer because of ownership of the 1950 Dodge Coupe (pp. 62–63).

At the conclusion of an eight-day trial defendant was convicted on the charge of selling and receiving narcotics in violation of law and was sentenced to prison.

Defendant bases his application upon three contentions: (i) that the arrest was illegal since the subsequent testimony of Dick indicates that the arrest could not be based on probable cause (citing United States v. Maresca, D.C. N.Y.1920, 266 F. 713, 725, and related cases) and consequently the fruits of the arrest, consisting of allegedly incriminating statements made by defendant could not be used on the trial (citing McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 and related cases); (ii) that the Assistant United States Attorney violated his duty by failing to notify the Court that the arrest complaint of Dick was false and consequently the conviction was obtained by fraud (citing Napue v. People of State of Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338; and United States v. McKeever, 2 Cir., 1959, 271 F.2d 669 and related cases); and (iii) that defendant was deprived of his opportunity to impeach the credibility of Dick by use of the allegedly false affidavit thus infusing "into the Government's case an element of fatal taint" (citing United States v. Walker, 2 Cir., 1952, 197 F.2d 287 and related cases recognizing the inherent power of the court to grant relief where a defendant has been denied the substance of a fair trial because wrongfully deprived of the use of vital evidence).

■■■ These contentions will be considered by the Court *seriatim*. As to the first contention there was probable cause since the warrant could have been issued upon information and belief of Dick obtained from conversations with Newkirk (see, Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327). Moreover, the arrest in this case could have been made without a warrant inasmuch as such an arrest is permissible where "the person making the arrest * * * has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." 26 U.S.C.A. § 7607; see also, Worthington v. United States, 6 Cir., 1948, 166 F.2d 557, 562; Draper v. United States, supra. Defendant has been laboring under a misapprehension

that the testimony of Dick concerning the so-called incriminating statements made by defendant was equivalent to a confession. This is not so because the word is not generally applicable to such testimony. Defendant never admitted making such statements under any circumstances. The issue therefore emerges as one of credibility. Even if the arrest were illegal and he had made such a confession, it would have been competent evidence, since it was voluntarily made (United States v. Walker, 2 Cir., 1952, 197 F.2d 287, 289). The cases cited by defendant in support of his contention were cases involving the fruits of illegal search and seizure and obviously inapposite. The arrest was clearly legal and the testimony of Dick concerning defendant's statements was competent and admissible.

■ Referring to the second challenge, defendant again has misinterpreted the authorities. His cases fall in two categories, (i) cases involving Grand Jury minutes where the duty is imposed upon the prosecutor to locate possible prior inconsistencies in the witness' testimony on the trial and call the same to the attention of the Court, and (ii) cases where the testimony of the witness on the trial is false and known to be false by the prosecutor. This case falls in neither of those categories. In the case of Grand Jury minutes only the prosecutor could know of inconsistencies, whereas in this case the inconsistencies were equally available to both parties. In the other class of cases there was false testimony on the trial. In this case no injury is claimed on the ground that Dick's testimony on the trial was false. The claim is based upon the falsity of the affidavit. Moreover, while the complaint in this case in support of the arrest was made on September 14, 1959, the case was not tried until March, 1960 and in his affidavit, sworn to July 1, 1960, the Assistant United States Attorney stated that he had no knowledge during the trial that there was any variance between Dick's statements in the complaint and his testimony on the trial.

■ There remains the third challenge which is the substance of the application. A review of the testimony discloses that Dick was not an eye witness to either of the narcotic sales. The principal witness on behalf of the Government was Newkirk whose testimony was corroborated by "special employee" Williams and as to certain peripheral facts by Fluhr. The Court is therefore of the opinion that there was sufficient testimony without the testimony of Dick to warrant a conviction. It should be observed that Dick's testimony on the trial was much more favorable to the defendant than the statements in his complaint. The Court concludes that under the circumstances the defendant was not deprived of the use of a document vital to his defense nor denied the substance of a fair trial.

■ The above contentions are apparently not framed upon any theory of newly discovered evidence. Regardless of the form in which it is cast, it is obvious however that defendant's application is a motion for a new trial based upon newly discovered evidence and as such must be governed by the rules applicable thereto. It is well established that two recognized standards have been applied in determining whether or not a new trial shall be permitted. One is the standard originally prescribed by Berry v. State, 10 Ga. 511, 527, and the other is the standard laid down in Larrison v. United States, 7 Cir., 1928, 24 F.2d 82. These tests have been analyzed in United States v. Costello, 2 Cir., 1958, 255 F.2d 876, and' need no elaboration here except to reiterate that the Larrison test is generally applied in cases of recantation of false testimony while the Berry test is generally applied in other cases (see, United States v. Hiss, D.C.N.Y.1952, 107 F.Supp. 128, 136, affirmed 2 Cir., 201 F.2d 372,. certiorari denied 345 U.S. 942, 73 S.Ct. 830, 97 L.Ed. 1368, and cases cited therein). However, in this case the same result is reached regardless of which standard is applied because under both standards the defendant has failed to satisfy the requirement of diligence in discover--

ing the "newly discovered" evidence (see, United States v. Flynn, D.C.N.Y.1955, 131 F.Supp. 742, 743; United States v. Ward, D.C.D.C.1960, 182 F.Supp. 53). The following colloquy between the Court and defendant's counsel (a former Assistant United States Attorney) on the oral argument of this motion illustrates this failure:

"The Court: * * * You don't expect the prosecutor to remember everything Dick said in his complaint. He tries a number of cases. You didn't do it. I am sure you didn't.

"Mr. Lewis: Except, judge, one thing. When I prepared the case I would call the agents in. I had the file and would go over all the papers. Don't you see, the paper is in the government's file.

"The Court: You would call the agents in and you would go over all the papers? Is that right?

"Mr. Lewis: Of course, yes sir.

"The Court: So you would know as an assistant.

"Mr. Lewis: Yes.

"The Court: As a defendant, or representing a defendant, you would know also there were such files available and that you could examine them.

"Mr. Lewis: Except I wouldn't have any use for it. * * *"

In addition defendant is disqualified for other reasons. Under the Larrison rule he has failed to satisfy the requirement that the testimony given by the material witness was false and under the Berry rule he has been unable to overcome the bar that at most the "newly discovered" evidence relied on is merely impeaching and the further bar that the "newly discovered" evidence would probably not produce an acquittal on a new trial.

■ This leaves for determination the Government's motion for remand. Defendant is out on bail because of a stipulation entered into between the United States Attorney and the defendant conditioned upon the defendant filing his papers on appeal within the statutory period. During this interim the defendant has filed his motion for a new trial. Defendant should not be penalized for failure to file his appendix and brief before the determination of this important motion for obvious reasons. Upon the denial of the motion, however, the defendant must prosecute the appeal with due diligence.

The motion for a new trial is denied. The motion to remand is granted, unless the defendant completes and perfects his appeal within thirty (30) days from the entry of the order herein, in which event the motion is denied. Settle order within four (4) days on two (2) days' notice.