UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony PASSERO, Defendant-Appellant.

No. 145, Docket 26461.

United States Court of Appeals Second Circuit.

Argued Dec. 16, 1960.

Decided April 27, 1961.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern District of New York, Brooklyn, N. Y. (Nathan K. Trynin, Brooklyn, N. Y., and Francis W. Rhinow, Asst. U. S. Attys., Greenport, N. Y., and Judith A. Gelb, Confidential Asst. to the U. S. Atty., Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Jerome Lewis, Brooklyn, N. Y., for defendant-appellant.

Before LUMBARD, Chief Judge, and MAGRUDER* and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

■ The principal question on this appeal is whether the district court should have granted a new trial to Anthony Passero where his counsel has belatedly become aware of the contents of a government agent's sworn complaint for Passero's arrest, which complaint contained statements contrary to the agent's testimony at trial, although Passero and his counsel knew of the existence of the complaint for more than five months before trial.

We conclude that the district court acted within its discretion in denying the motion for a new trial as it is clear from the record that both Passero and his counsel knew of the existence of the complaint for many months before trial. Under such circumstances the defendant will not be heard to contend, after his conviction, that he could have used the complaint to examine the government agent at the trial, and to argue that his failure to use it is excused by the fact that he was unaware of its contents. Accordingly, as we find no error in the conduct of the trial, we affirm the conviction and the denial of the motion for a new trial.

Anthony Passero was tried in March 1960 on charges of selling and concealing narcotic drugs on two occasions in August 1958. He was convicted on four counts of the indictment and sentenced to six years' imprisonment. After notice of appeal had been filed, his counsel moved this court to remand the case to the district court for consideration of a motion for a new trial. The basis for this motion was counsel's allegation that, in the course of preparing to file the record on appeal, he had discovered a complaint, sworn to before the United States Commissioner by Narcotic Agent Fred Dick, upon which complaint warrants had issued for the arrest of Passero and one Vincent Charles Papa. In this complaint, dated May 8, 1959, and set forth in the margin,[1] Dick swore that on August 27,

---

* Sitting by designation.

1. The complaint read as follows:
   "Fred T. Dick, being duly sworn, deposes and says that he is a Special Agent of the Narcotics Bureau of the U. S. Treasury Department, duly appointed according to law and acting as such.

   That on or about the 27th day of August 1958, in front of premises 4238 Crescent Street, Long Island City, Queens, N. Y., within the Eastern District of New York, the above named defendants, Anthony Passero and Vincent Papa, also known as Charles Rinaldi, did unlawfully sell, dispense and distribute a narcotic drug, to wit: One ounce and One hundred sixty-two (162) grains of Heroin Hydrochloride, a derivative of opium, for the sum of Two Hundred Twenty ($220.00) Dollars, to one, William H. Newkirk, knowing the same to have been imported contrary to law. (Title 21 United States Code, Section

1958 he had personally observed Passero deliver narcotics to William Newkirk, a narcotic agent, and had seen him receive money from Newkirk. However, at Passero's trial, Agent Dick, on cross-examination, swore that he had not personally observed Passero deliver narcotics to Newkirk. On direct examination Dick had testified that he had seen Passero and Papa standing on a street corner— where Agent Newkirk had testified that the sale was made that same night—and that, after going around the block, Dick returned and saw Passero and Papa drive away together.

We remanded the case on June 13, 1960 to permit the district court to consider a motion for a new trial. Judge Bartels heard the matter on affidavits and denied the motion, 185 F.Supp. 665. Passero now seeks review of the order denying him a new trial as well as reversal of his conviction for alleged errors in his trial.

Passero urges that he is entitled to a new trial on two grounds both related to the discrepancy between Dick's complaint and his trial testimony. First, he asserts that the newly discovered evidence casts sufficient doubt upon his guilt so that the trial court, acting under Rule 33 of the Federal Rules of Criminal Procedure, 18 U.S.C., should have granted him a new trial "in the interest of justice." Second,

he urges that whether or not the evidence met the standards that have been developed to determine whether a new trial should follow the discovery of new evidence, the government's failure to inform his counsel of the affidavit deprived him of a fair trial and therefore vitiated his conviction.

Consideration of Passero's contentions requires us to summarize the trial proceedings in order to evaluate the importance of Dick's testimony and the opportunities available to Passero and his counsel for the discovery of Dick's sworn complaint.

Passero was tried together with one Lillian Vashti Moore as both were charged in Count VI of the indictment with concealing heroin on September 8, 1959, but at the conclusion of the trial Count VI was dismissed as to Passero. Although the jury convicted Passero on four other counts for sales and possession of heroin on August 15 and 27, 1958, it reported a disagreement as to the defendant Moore.[2]

### The Trial Testimony

#### Events of August 14–15, 1958

On the government's case, Agent Newkirk testified to the negotiations which he and an informer, Charlie Williams, had with Passero in August 1958 which

---

174; Title 18 United States Code, Section 2.)

"That the source of your deponent's knowledge is a conversation had between William H. Newkirk and Anthony Passero, one of the defendants herein, in which Newkirk related to your deponent that he had placed an order with Passero for the above-mentioned amount of heroin; personal observations by your deponent in which your deponent observed Vincent Papa, also known as Charles Rinaldi, and Anthony Passero together on the northeast corner of 42nd Road and Crescent Street in Long Island City, Queens, N. Y.; your deponent further observed Anthony Passero walk across the street and meet William Newkirk and hand the above-mentioned heroin to him and observed Passero take money in exchange therefor; deponent further observed the defendant Passero rejoin Papa on the above-mentioned corner and

saw both defendants leave in a 1949 grey Cadillac.

"Wherefore, your deponent respectfully prays that warrants issue for the apprehension of the above named defendants Anthony Passero and Vincent Papa, aka-Charles Rinaldi, that they may be dealt with according to law."

2. A third defendant, Vincent Charles Papa, charged with concealment of heroin on May 12, 1959, had pleaded guilty prior to trial.

As we are not here concerned with Count VI, there is no purpose in summarizing the evidence concerning the alleged events of September 8, 1959 except to point out that this had to do with agents following a car driven by Passero and arresting Moore after she left the car. Moore was found in possession of a paper bag containing heroin but at trial she denied knowledge of the contents of the bag.

he said resulted in sales of heroin on August 15 and 27. Shortly before midnight of August 14, Newkirk had Williams telephone Passero and arrange a meeting. The three men met at Charlie's Tavern in Long Island City and for $250 Passero agreed to sell two ounces of heroin which he said could be found in an outdoor telephone booth near a gas station. Some five minutes later—early on August 15—the witness and Williams drove to the booth and there, taped to a shelf, he found a white package containing envelopes filled with a white powder which he later delivered to Agent Dick in Manhattan.

Agent Dick testified that on the evening of August 14 he had given $250 in government funds to Newkirk and received from him a white powder which tests showed to be an opium derivative. He further stated that from his car parked outside Charlie's Tavern, he saw Newkirk and Williams and, shortly thereafter, Passero entered the tavern. He followed Passero from the tavern to the nearby Cocoanut Inn and thereafter, while driving along, saw Newkirk standing in the telephone booth near the gas station.

Agent Arthur Fluhr testified that he was sitting in another car outside Charlie's Tavern and saw Newkirk, Williams and Passero enter and leave the tavern in the order testified to by Newkirk. He then followed Newkirk and Williams and saw Newkirk enter the telephone booth and later return to his car.

### Events of August 26–27, 1958

Agent Newkirk testified that on August 26 he telephoned Passero at the Cocoanut Inn. He said that Williams got on the telephone and talked to Passero and that he could hear Williams and Passero agree to a sale of "two pieces of heroin" for $220 later that night at Crescent Street near 42nd Road in Long Island City. Newkirk and Williams drove there and about midnight met Passero who handed Newkirk two cellophane envelopes containing a white powder. Newkirk gave $220 to Passero who then drove away in a gray Cadillac with Papa. Newkirk returned to Manhattan and gave the powder to Agents Dick and Fluhr.

Agent Fluhr testified that he was outside the Cocoanut Inn that night, that he saw Passero enter shortly before midnight and go into a telephone booth, after which Passero left and drove to 38–39 12th Street, Long Island City, went into the house, came out, and drove to Crescent Street and 42nd Road where he parked his car.

Agent Dick testified that on August 26 he gave Newkirk $250 of government funds and that evening drove in the vicinity of Crescent Street and 42nd Road, Long Island City, where he saw the defendant Passero and Papa standing on the corner. He said further that, after going around the block, he returned to see them enter a Cadillac car and drive away. Tests showed that the white powder which Dick later received from Newkirk was heroin.

### Events of September 14, 1959

Dick testified that he arrested Passero in Astoria on September 14, 1959. According to Dick, Passero said that he was going to give himself up the following day; that he would turn over his brother's Dodge [3] since "he didn't want him to suffer for something he had done"; and that he had been living for several weeks under an alias.

On cross-examination of Dick it was developed that his report of the arrest, made on September 15, did not include any of the statements which Dick attributed to Passero. Although Dick testified that he made "many reports" about the case, we have before us only one report and it concerns the defendant Moore. The record does show that Passero's counsel examined a report dealing with Passero's arrest but that is not in the record. The jury knew only that Dick

---

3. This car had allegedly been involved in the Count VI charge of September 8, 1959, which the district court dismissed as to Passero.

had arrested Passero; so far as the record shows it did not know the basis for the arrest or even that the arrest had been made on a warrant.

### The Defense

Passero testified on his own behalf and denied that he had sold narcotics to Newkirk or Williams on the August 1958 occasions or at any other time. He said that Dick's testimony regarding his statements made upon his arrest in September of 1959 was false.

On cross-examination, Passero admitted that prior to his arrest, he had been living in an apartment under an assumed name and that he had been using a driver's license which he had obtained under a false name because his own license had been suspended for "persistent violations." Although at the time of arrest Passero was unemployed and drawing unemployment insurance, he was in possession of an Oldsmobile automobile which he claimed was his and which cost $4,655, for which he had made a cash payment of $1,600. Passero, who had no criminal record, also called two businessmen as character witnesses.

### The Government's Rebuttal

The government called in rebuttal its informer, Charles Williams. His testimony was not transcribed but Judge Bartels gave a detailed summary of it which both sides appear to accept as accurate. It appears that Williams corroborated the essence, if not the detail, of Newkirk's testimony. He said, moreover, that he had purchased drugs from Passero on several occasions prior to August of 1958. On cross-examination, it was developed that Williams had been under indictment for federal narcotic offenses during August of 1958 and that upon pleading guilty to three counts of selling narcotics he received a five-year sentence, which he was serving at the time of Passero's trial and which was less than the possible maximum of fifteen years. He had also been convicted by the State of New York for selling narcotics

and for disorderly conduct. Judge Bartels charged the jury that there were a "number of discrepancies" in Williams' story, particularly with respect to his prior dealings with Passero; he also reminded the jury that Williams had admitted giving false testimony on the stand.

### The Summations and the Verdict

As was to be expected, the summations analyzed the testimony in detail and drew the issues largely in terms of the credibility of the government's witnesses. At one point the prosecutor said to the jury "if you don't believe the agents you may just as well close the books on the prosecution of narcotics." The defense took exception to this statement and Judge Bartels quite properly charged the jury that the statement "was inaccurate and improper" and that they should ignore and disregard it. The jury deliberated for six hours on March 15, 1960, and then convicted Passero on all four counts and reported a disagreement as to Moore.

The evidence adduced at trial obviously was sufficient to convict Passero if the jury chose to believe the government witnesses rather than Passero. In his motion seeking a new trial, Passero's counsel argued, however, that if the conflict between Dick's complaint and his testimony at trial had been brought to the attention of the jury, the defense's position on the credibility issue would have been greatly strengthened and the verdict might well have been different.

We are of the opinion that the record of the proceedings before the United States Commissioner, which was part of the record of the case in the office of the clerk of the district court, and which is before us, requires us to hold that Passero himself, and his counsel as well, must be charged with knowledge of Dick's complaint. The record compels the conclusions that Passero knew of the existence of the complaint on September 15, 1959, and his counsel knew of it two days later on September 17 when he ap-

peared on behalf of Passero. Being charged with knowledge of the complaint, the defense will not be heard to say that it did not know what the complaint said.

Passero was arrested by Dick on the evening of September 14, 1959 and the next day he was arraigned before United States Commissioner Max Schiffman who fixed bail in the sum of $25,000 and committed him to the custody of the United States Marshal in default of bail. The commitment recites that the defendant had been arraigned and that he had been informed of the charge against him which could refer only to the charge in Dick's complaint that the defendant had unlawfully sold, dispensed and distributed heroin on August 27, 1958, in violation of 21 U.S.C.A. § 174. This was in accordance with Rule 5(b) of the Federal Rules of Criminal Procedure which requires the Commissioner to "inform the defendant of the complaint against him" when a prisoner is arraigned. Thus Passero knew, at the time of his arraignment and commitment, that there was on file with the Commissioner a complaint charging him with violation of the narcotic laws. The record before the Commissioner further shows that Passero waived examination and he was thereupon held to answer the charges in the district court.

Commissioner Schiffman's records further show that two days later, on September 17, counsel for Passero moved to reduce the bail and that this was reduced to $15,000 upon consent of the United States Attorney.

From these undisputed record facts we conclude that Passero knew of the complaint on September 15 and his counsel knew of it two days later. In addition, counsel here has conceded that he was at all times familiar with the procedure before the Commissioner including the fact that a complaint was on file there. Thereafter, on October 1, 1959, the indictment was filed and the clerk's minutes note that on October 13, 1959 the Commissioner's papers were filed with the clerk. Thus Dick's complaint was a public record in the case.

On such a record a court will not permit a defendant or his counsel to claim that they were uninformed of the contents of a vital document in the very case. Indeed even where an arrest warrant was not filed in the district court, we have held that counsel's negligence in failing to obtain such a complaint for use at trial precluded the grant of a new trial to his client. United States v. Walker, 2 Cir., 1952, 197 F.2d 287, certiorari denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679. Any other rule would put a premium on carelessness and neglect; it would encourage a strategy of not making use of available information with the thought that its later "discovery" might be the basis for a new trial if the result of the trial was adverse. Apparently Judge Bartels credited counsel's assertion that he was not aware of the statements of the complaint until his preparation of the appeal papers and by what we say we do not mean to intimate that we disagree with the trial judge's finding of that fact. We hold that such an inquiry is immaterial where the circumstances are such as to charge the defendant and his counsel with knowledge. If the defense knows that there was a complaint on file, as we have demonstrated that it must have, it will not be heard to complain of its own failure to make use of such a document when the case was tried.

We think that these considerations also dispose of Passero's claim that he was improperly prejudiced because the government permitted Dick to testify without "alerting the defense, the court and the jury to the existence of Agent Dick's false affidavit covering the same subject matter." Surely the prosecutor was under no duty to call to the attention of the defense a paper which everyone knew to be in existence. It is not the business of the government to suppose that a defendant and his counsel do not know what is in the case file which was

equally available to the defense for over five months before trial and during the trial.

■■ Nor is there any basis for a claim that the government has knowingly used perjured testimony. Compare Alcorta v. Texas, 1957, 355 U.S. 28, 78 S. Ct. 103, 2 L.Ed.2d 9 and Napue v. Illinois, 1959, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed.2d 1217. The fact that there is a material difference between Dick's trial testimony and his sworn complaint does not mean that the testimony at trial is not true. Indeed the trial testimony is less damaging to Passero as Dick testified only that he saw Passero at the scene on August 27, whereas in his complaint he stated that he witnessed the delivery of the narcotics and the payment of the money. Dick's trial testimony was not inconsistent with the testimony given by the other government agents and by the informer. While cross-examination of Dick about the statements in his complaint might well have damaged his credibility, we do not see how the statements in the complaint prove that his trial testimony was perjurious. It follows that, regardless of the government's knowledge of the change in Dick's version of what he saw on August 27, the government cannot fairly be criticized for using evidence which it had no reason to believe was not true. For these reasons we see no basis for Passero's assertion that a new trial should be granted in the interest of justice. On the contrary, we think that it would be frustrating to the due administration of criminal justice if defendants were permitted, after a verdict of guilty, to claim ignorance of matters of record in the court files of the case.

■ A review of the evidence leaves us with the firm impression that there has been no miscarriage of justice in this case; [4] anything short of that does not justify making an exception to the salutary rule that parties may not later complain of their ignorance of what was in the court file and available to them at all times.

For these reasons we affirm the denial of the motion for a new trial.

We have examined the allegations of error in the conduct of the trial and find them to be without merit.

■■ Passero complains of prejudicial statements in the prosecutor's summation to the jury. In response to the defense argument that the government was improperly relying on guilt by association, the prosecutor argued that "when you walk like a duck, talk like a duck, and you look like a duck, you are a duck." Although the image may not have been particularly apt, the remarks were in no way improper and indeed focused the jury's attention upon the evidence that tended to show Passero's guilt. In summation the prosecutor also stated that "If you don't believe the agents you may just as well close the book on the prosecution of narcotics." Any possibly harmful effect of this comment, which was made in response to a sharp attack upon the agents'

4. There is no merit to Passero's contention that Agent Dick's testimony of Passero's statements at the time of his arrest on September 14 would have been inadmissible if counsel had known of the false statement in Dick's sworn complaint of May 8, 1959. Whether or not the arrest was legal, incriminating statements made while an accused is under arrest are admissible if made voluntarily. United States v. Walker, 2 Cir., 1952, 197 F.2d 287, 289, certiorari denied 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679; Smith v. United States, 1958, 103 U.S. App.D.C. 48, 254 F.2d 751, 758, certiorari denied 357 U.S. 937, 78 S.Ct. 1388, 2 L.Ed.2d 1552; cf. Brinegar v. United States, 10 Cir., 1947, 165 F.2d 512, affirmed 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. There is no evidence in the record that suggests that Passero was in any way coerced or that there was an "unnecessary delay" before he was arraigned before the United States Commissioner. At trial no objection was taken to the admission of this evidence. Moreover, counsel did not even cross-examine Dick to ascertain the basis for Passero's arrest.

credibility, was cured by the judge who termed the remark "inaccurate and improper" and instructed the jury to completely ignore and disregard it.

■ Passero complains of the judge's charge in several respects but we find each of the objections without merit. The court's charge fully and clearly discussed the factors bearing upon credibility and charged that the jury could disregard the entire testimony of Williams because it was false in part or discount it because of his criminal record. Similarly the portion of the charge relating to the effect of character testimony was more than adequate to instruct the jury. See United States v. Kimmel, 2 Cir., 1960, 274 F.2d 54, 57.

■ Passero complains that he was prejudiced by the judge's instruction concerning the effect of the dismissal of Count VI upon the testimony that connected Passero with Moore. The court stated that its dismissal was not a finding "that the defendant Passero was or was not in an automobile. * * * This dismissal does not constitute a reflection upon the credibility of any witnesses * * *". The instruction was proper since the jury might well have considered the dismissal to constitute a reflection upon the credibility of the agents who had testified that Passero was driving Moore immediately before she was arrested and found carrying narcotics, although in fact the dismissal was prompted by the fact that no connection between Passero and the narcotics in Moore's pocketbook had been shown. Although Passero may have been entitled to a further instruction that the jury should not consider the evidence on Count VI against him, he did not make any such request. In any event, the court's less specific instruction that the jury consider the question of the defendants' guilt or innocence "of the offenses for which they are on trial" and the final reminder that "only defendant Moore is involved in Count VI" sufficiently advised the jury as to what they should consider.

Affirmed.