Affirmed by published opinion. Chief Judge WILKINS wrote the majority opinion, in which Judge LUTTIG joined. Judge DEVER wrote an opinion concurring in part and dissenting in part.
OPINION
WILKINS, Chief Judge.
Karl E. Moore, Sr., Terrance Smith, and Rodney Reep (collectively, “Appellants”) appeal their convictions and sentences in this drug conspiracy case. Concluding that all of Appellants’ numerous arguments are without merit,[1] we affirm.
I.
The underlying facts are not directly pertinent to the issues raised on appeal and thus may be briefly stated. In 1997, Moore and his family moved from Arizona to the Tidewater area of Virginia. Moore opened a gas station and convenience store, which soon became a haven for gambling and drug dealing. Moore primarily dealt cocaine and cocaine base. Smith assisted Moore in the enterprise, often delivering large quantities of narcotics and collecting money from drug customers. Smith also stored drugs at his home for Moore.
After Reep was released from prison in May 2001, Moore assisted him in getting started in the drug business. (Moore and Reep were old friends, and Moore had supplied Reep with heroin for resale while Reep was in prison.) Reep worked at an automobile shop in the Tide-water area. Vehicles loaded with cocaine would be driven to the shop, where Reep would unload the cocaine. Moore paid Reep for his services in cocaine.
Each Appellant was convicted of conspiracy to possess with the intent to distribute cocaine, cocaine base, or heroin, see 21 U.S.C.A. § 846 (West 1999), and additional offenses. Moore was sentenced to life imprisonment; Smith and Reep were each sentenced to 360 months imprisonment.
II.
We first consider Appellants’ challenges to their convictions.
A. Moore’s Challenges
1.
Moore first argues that certain counts of his indictment were unconstitutionally vague. In particular, Moore challenges counts such as Count Four, which alleged that he possessed cocaine with the intent to distribute “[i]n or about Winter, 2000.” J.A. 165. He maintains that he cannot be expected to mount a defense to a charge that does not identify a particular date.
An indictment meets the guarantees of the Fifth and Sixth Amendments *261 “if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.” Hamling v. U.S., 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).[2] “Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required.” U.S. v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir.1994) (internal quotation marks omitted). Since time is not an element of possession with the intent to distribute and there is no argument that the statute of limitations had expired, see U.S. v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993), the indictment was not unconstitutionally vague. Accord U.S. v. Synowiec, 333 F.3d 786, 791 (7th Cir.2003) (“Where the indictment alleges that an offense allegedly occurred ‘on or about’ a certain date, the defendant is deemed to be on notice that the charge is not limited to a specific date. He therefore cannot make the requisite showing of prejudice based simply on the fact that the government has failed to prove a specific date.” (internal quotation marks omitted)).
2.
Moore next asserts that the district court improperly admitted certain out-of-court statements made to Government witness William Henry Scott, IV. We conclude that Moore is not entitled to reversal of his convictions on this basis.
The Federal Rules of Evidence exclude from the definition of hearsay “a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.” Fed.R.Evid. 801(d)(2)(E). “To admit testimony under this rule, a court must conclude (1) that there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought and (2) that the statements at issue were made during the course of and in furtherance of that conspiracy.” U.S. v. Neal, 78 F.3d 901, 905 (4th Cir.1996) (internal quotation marks omitted).
Moore challenges the admission of two statements to which Scott testified. First, Scott testified that in August 2002 Gregory Bonds called him and asked him to pick up two kilograms of cocaine that were in a closet in Bonds’ home. Bonds told Scott that Moore had shipped the cocaine from Arizona to Virginia. Second, Scott testified about a conversation he had with Van Beasley, an associate of Moore’s. When Scott observed Beasley with a quantity of cocaine and asked how he had obtained it, Beasley stated that Moore had robbed someone who owed him money.
Although Moore objected to the admission of the statement made by Bonds, he failed to object to the admission of Beasley’s statement. We therefore review the admission of Bonds’ statement for abuse of discretion, see id., and the admission of Beasley’s statement for plain error, see Fed.R.Crim.P. 52(b); U.S. v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). With respect to Beasley’s statement, Moore must establish not only that an error occurred, but also that the error was plain and that it affected his substantial rights. Olano, 507 U.S. at 732, 113 S.Ct. 1770. Even if Moore makes this three-part showing, correction of the error remains within our discretion, which we “should not exercise ... unless the error seriously affects the fairness, integrity or *262 public reputation of judicial proceedings.” Id. (alteration & internal quotation marks omitted).
Moore maintains that the Government failed to establish that Bonds and Beasley were part of the conspiracy, noting that Bonds was not named in the indictment and that there was no testimony that Bonds ever bought drugs from Moore. We agree with the Government that the evidence presented was sufficient for the jury to conclude that Moore, Scott, Bonds, and Beasley were all involved in the activities of the conspiracy.
Moore next claims that the statements were not made in furtherance of the conspiracy. “A statement by a co-conspirator is made ‘in furtherance’ of a conspiracy if it was intended to promote the conspiracy’s objectives, whether or not it actually has that effect.” U.S. v. Shores, 33 F.3d 438, 443 (4th Cir.1994). For example, statements made by a conspirator to a non-member of the conspiracy are considered to be “in furtherance” of the conspiracy “if they are designed to induce that party either to join the conspiracy or to act in a way that will assist it in accomplishing its objectives.” Id. at 444. Most courts, including the Fourth Circuit, “construe the in furtherance requirement so broadly that even casual relationships to the conspiracy suffice to satisfy the exception.” Jack B. Weinstein & Margaret A. Berger, Weinstein’s Federal Evidence vol. 5, §§ 801.34[5], 801-89 (Joseph M. McLaughlin ed., 2d ed., Matthew Bender 2005). In light of the broad construction of the “in furtherance” requirement, we conclude that the district court did not abuse its discretion in concluding that the statements by Bonds and Beasley were designed to further the conspiracy. We therefore affirm the admission of these statements.
3.
Moore next contends that the district court abused its discretion in allowing Moore’s son, Karl Moore, Jr. (Moore, Jr.), to testify that at age six he “used to deliver drugs with DC [a friend of Moore’s] on the bus to Phoenix, Arizona for my father.” J.A. 667. Moore maintains that this was testimony regarding a prior bad act, in violation of Rule 404(b) of the Federal Rules of Evidence. Because Moore did not object to this testimony at trial, our review is for plain error.
Rule 404(b) provides that evidence of other crimes is inadmissible when it is offered to prove “the character of a person in order to show action in conformity therewith.” This court has recognized that Rule 404(b) is primarily a rule of inclusion, not exclusion. U.S. v. Queen, 132 F.3d 991, 994-95 (4th Cir.1997). “Evidence that is (1) relevant to an issue other than character; (2) necessary; and (3) reliable is admissible under Rule 404(b).” U.S. v. Wells, 163 F.3d 889, 895 (4th Cir.1998) (internal quotation marks omitted). Evidence is necessary, even if it does not relate to an element of a charged offense, “when it furnishes part of the context of the crime.” Id. at 896 (internal quotation marks omitted).
There was no violation of Rule 404(b) here. Moore, Jr.’s testimony provided part of, the context of the crime and revealed the basis for Moore, Jr.’s knowledge of his father’s drug operations. See U.S. v. Palma-Ruedas, 121 F.3d 841, 851-52 (3d Cir.1997) (concluding that evidence of prior drug activity was admissible under Rule 404(b) because it “was a link in a chain of events that led to the charged conduct”). While Moore, Jr.’s testimony regarding his involvement in the drug trade at age six no doubt reflected poorly on Moore, this prejudice did not outweigh the probative value of the evidence.
*263 4.
Moore next asserts that the district court abused its discretion in excluding a witness, Shanika Simmons, on the basis that she violated an order sequestering witnesses. Moore does not dispute that Simmons violated the witness sequestration rule. He asserts, rather, that the sanction of exclusion was so disproportional to the violation as to be an abuse of discretion. See U.S. v. Cropp, 127 F.3d 354, 363 (4th Cir.1997) (stating standard of review).
Simmons is Moore’s daughter and was called as a witness on his behalf. The Government moved to exclude her as a witness on the basis that she had been present in the courtroom during testimony on two different days. After questioning Simmons under oath, the district court ruled that it would allow her to testify as to Moore’s character but not as to any substantive issues. Moore then proffered that Simmons would have testified regarding Moore, Jr.’s various periods of incarceration, Moore’s employment, and Moore’s relationship with Moore, Jr.
A district court has three options for addressing a violation of a sequestration order. It can sanction the witness for contempt; ensure that the jury is aware of the violation through cross-examination by counsel or through instructions by the court; or exclude all or part of the witness’ testimony. U.S. v. Rhynes, 218 F.3d 310, 323 (4th Cir.2000) (en banc). Whatever remedy is employed must be proportional to the violation. Id. at 321.
Exclusion of a witness’ testimony is “an extreme remedy” that “impinges upon the right to present a defense,” and thus should be employed sparingly. Id. (internal quotation marks omitted). Here, the primary purpose of Simmons’ testimony was to impeach the previous testimony of Moore, Jr. Although it was not clear how much time Simmons spent in the courtroom, there appears to be no dispute that she was not present—indeed, was not even in the courthouse—when Moore, Jr. testified. Therefore, it is not possible that Simmons could have tailored her testimony to Moore, Jr.’s in any way. Cf. U.S. v. Montgomery, 262 F.3d 233, 243-44 (4th Cir.2001) (affirming exclusion of witness when it was not clear which witnesses she had heard testify). We therefore conclude that the district court abused its discretion in altogether excluding Simmons’ testimony.
The error was harmless, however. The parties stipulated regarding the periods of time when Moore, Jr. was in prison. And, several other witnesses testified regarding Moore’s legitimate business activities and his relationship with Moore, Jr. Accordingly, Simmons’ testimony would have been cumulative. See U.S. v. Bales, 813 F.2d 1289,1296 (4th Cir.1987).
5.
During its rebuttal closing argument, the Government made the following statements:
You know the old saying about birds of a feather. Well, the defendants chose this flock. They criticize these witnesses, but the reason they are witnesses is because they are the customers and acquaintances chosen by the defendant to associate with....
Now, all of these (defendants are guilty, just as ... many of the witnesses! ] are guilty of being drug dealers and being part of this conspiracy. It’s just a matter of degree. The only difference is some who sat on that imtness stand admitted it and those sitting at these tioo tables have not.
*264 J.A. 2241-42 (emphasis added). No objection was raised when this argument was made. Moore now argues that the emphasized comments were improper because they are a statement of “a specific personal belief by the Government that] the Appellant is guilty of the offenses.” Supp. Br. of Appellant Karl E. Moore, Sr. at 6 (Sept. 13, 2004).[3]
In order to obtain a new trial on the basis of prosecutorial misconduct, Moore must demonstrate that the Government’s remarks were, in fact, improper and that the remarks prejudiced him. U.S. v. Mitchell, 1 F.3d 235, 240 (4th Cir.1993). An assessment of prejudice requires the court to consider
(1) the degree to which the prosecutor’s remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.
Id. at 241 (internal quotation marks omitted). Because Moore failed to object at trial, the ordinary test for reversal based on improper argument is augmented in that Moore must also show that the impropriety of the argument was plain. And, even if Moore satisfies these requirements, the court retains discretion to decline to notice the error.
“As a general premise, a prosecutor’s repeated references to his or her personal opinion about a defendant may indeed be found improper.” U.S. v. Higgs, 353 F.3d 281, 332 (4th Cir.2003), cert. denied, 543 U.S. 999, 125 S.Ct. 627, 160 L.Ed.2d 456 (2004). It is permissible— although not preferable — for a prosecutor to argue his belief that the evidence proves the defendant’s guilt. US. v. Pupo, 841 F.2d 1235, 1240 (4th Cir.1988) (en banc); cf. U.S. v. Sherrill, 388 F.3d 535, 538 (6th Cir.2004) (holding that statement, “that man is guilty,” was not improper because phrase was prefaced by “the government submits to you” (internal quotation marks omitted)). What the prosecutor may not do is suggest a belief in the defendant’s guilt that is not explicitly tied to the strength of the evidence, because such an argument may suggest to the jury that the prosecutor has independent knowledge of the defendant’s guilt. 75A Am.Jur.2d Trial § 634 (Westlaw 2005); see Pupo, 841 F.2d at 1240.
The Government’s remarks here were made in response to Appellants’ challenges to the witnesses’ truthfulness in their closing arguments. Cf. Higgs, 353 F.3d at 332 (holding that argument about what defendant’s life in prison would be like was not improper, in part because argument responded to defense claims about prison life). Nevertheless, it is arguable that the Government’s assertion of guilt was improper. But cf. U.S. v. Passero, 290 F.2d 238, 245 (2d Cir.1961) (holding that argument that “when you walk like a duck, talk like a duck, and you look like a duck, you are a duck” was not improper when made in response to defense claim that prosecution was relying on guilt by association (internal quotation marks omitted)). Even if the argument was improper, however, there was no prejudice. The remark was isolated, occurring at the beginning of a lengthy rebuttal argument. And, given the context in which the argument was *265 made, it is unlikely that it had any measurable tendency to mislead the jury, nor does it appear that the prosecutor had any intention to divert the attention of the jury.
B. Reep’s Challenges[4]
1.
Reep first argues that the charges against him should have been dismissed on double jeopardy grounds. We disagree.
Reep initially was indicted separately from the other Appellants. Just before jury selection began for Reep’s trial, the Government informed the district court that Government witness Curtis Roberson had failed to appear despite his promise to do so. The court issued a material witness warrant, and Roberson was taken into custody. The court conducted a hearing, at which Roberson testified that he was “confused” regarding his duty to appear. J.A. 233. Roberson also testified that he was taking numerous medications, including an anticonvulsant, an antidepressant, and an antipsychotic. The district court directed that Roberson be taken into custody as a material witness. After the jury was sworn, the court learned that Roberson had not been provided with his medications during the five days he had been in custody. The court questioned Roberson, who stated that he felt “[a] little weak,” id. at 243, and somewhat confused. The court granted Reep’s request for a mistrial on the ground that Roberson’s competency was suspect and he needed a psychiatric evaluation.
Thereafter, Reep was indicted along with the other Appellants. Prior to trial, Reep moved to bar retrial on double jeopardy grounds, arguing that he had been forced to move for a mistrial by the Government’s failure to ensure that Roberson was provided with his medications. Reep argued that even if the Government did not intend to provoke a mistrial, its conduct had been so reckless as to be “the functional equivalent of’ intent to cause a mistrial. Id. at 221. The district court denied the motion.
While Reep now concedes the absence of any evidence that the Government acted with intent to provoke a mistrial, he continues to press his claim that the Government was so reckless in not ensuring delivery of Roberson’s medications that it should be deemed to have acted intentionally. We disagree.
The Double Jeopardy Clause provides that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.” U.S. Const, amend. V. This clause protects a criminal defendant from facing “repeated prosecutions for the same offense,” Or. v. Kennedy, 456 U.S. 667, 671, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), and accordingly, the government is generally allowed only one opportunity to compel a defendant to stand trial, Ariz. v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). However, the Double Jeopardy Clause does not apply when a defendant requests or consents to a mistrial, unless the prosecutor has engaged in conduct intended to provoke a mistrial. Kennedy, 456 U.S. at 675-76, 102 S.Ct. 2083. The Kennedy intent exception is reserved for conduct “intended to ‘goad’ the defendant into moving for a mistrial.” Id. at 676, 102 S.Ct. 2083. Further, the defendant bears the burden of proving that the prosecution acted with specific intent to provoke a mistrial. U.S. *266 v. Borromeo, 954 F.2d 245, 247 (4th Cir.1992).
Reep provides no support for his claim that reckless conduct can be equated to intentional provocation of a mistrial request. Even if we were to accept this proposition, however, the facts here do not support a finding of recklessness. Officials at the local jail where Roberson was housed assured the Government that Roberson would receive his medications. The Government sought to ensure that Roberson received his medications by offering to obtain the medications and bring them to the jail — an offer that the jail refused because it prohibits anyone from bringing medications into the jail. Additionally, the United States Marshal Service requested that a doctor examine Roberson. It thus cannot be said that the Government was reckless with respect to Roberson’s need to be provided with his medications.
2.
Reep next complains that the district court erred in restricting his cross-examination of certain witnesses. We conclude that the district court did not abuse its discretion. See U.S. v. Turner, 198 F.3d 425, 429 (4th Cir.1999) (stating standard of review).
The Constitution guarantees the right of a criminal defendant “to be confronted with the witnesses against him.” U.S. Const, amend. VI. “The main and essential purpose of confrontation is to secure for the [defendant] the opportunity of cross-examination.” Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (emphasis & internal quotation marks omitted). Indeed, “[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.” Id. at 316, 94 S.Ct. 1105. Nevertheless, the district court retains “wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness’ safety, or interrogation that is repetitive or only marginally relevant.” Del. v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). With these' principles in mind, we review Reep’s particular claims.
a. Karl E. Moore, Jr.
Moore, Jr. testified about Reep’s involvement in the conspiracy during the summer and fall of 2001. According to this testimony, Moore wanted to help Reep reestablish himself in the drug business following his release from prison in May 2001. Moore provided Reep with cocaine to sell in exchange for Reep accepting deliveries of cocaine and for allowing the conspiracy to use an automobile paint shop where he worked to remove cocaine that had been concealed in vehicles.
On cross-examination, Reep’s counsel questioned Moore, Jr. at length about his agreement to cooperate with the Government, his truthfulness, and his ability to accurately recall the events of the summer of 2001. The district court first asked Reep’s counsel to conclude cross-examination after he had been questioning Moore, Jr. for approximately one hour. Reep’s counsel proceeded with further cross-examination concerning statements Moore, Jr. had made when he was arrested. The court directed counsel to move on after the Government stipulated that this questioning had laid an adequate foundation for a subsequent witness’ testimony. Counsel asked a few more questions, and then closed his cross-examination.
The district court did not abuse its discretion in limiting cross-examination. Reep was allowed to thoroughly explore issues relating to Moore, Jr.’s recall of *267 events and his motives for testifying. Any further testimony on these subjects would have been cumulative. See U.S. v. Lancaster, 96 F.3d 734, 744-45 (4th Cir.1996) (en banc) (holding that district court did not abuse its discretion in precluding further inquiry into contents of police officer’s disciplinary file because further inquiry would have been cumulative).
b. Law Enforcement Witnesses
During a recess, Reep’s attorney observed two Government witnesses, Officer Heath Eckstein (who had just testified) and Officer John Poch (who was about to testify), talking in the hallway. According to counsel, the officers were “going over a report” that Officer Eckstein held in his hand. J.A. 1393. Although the court allowed Reep’s counsel to question Officer Poch regarding the conversation, after counsel exceeded the bounds set by the court for this examination, the court questioned the officers. Both officers — who were partners in the investigation of the conspiracy — admitted having a conversation, but denied discussing the trial.[5] The court refused to allow Reep’s counsel to further cross-examine the officers about their conversation. Reep contends that this refusal was an abuse of discretion.
When a party alleges a violation of a sequestration order, the court may allow the matter to be explored through cross-examination. U.S. v. Sepulveda, 15 F.3d 1161, 1175 n. 8 (1st Cir.1993). The party alleging a violation bears the burden of demonstrating that a violation in fact occurred. U.S. v. Meggers, 912 F.2d 246, 250 (8th Cir.1990). Here, both Reep’s counsel and the district court examined the officers regarding the potential violation of the sequestration order without producing any indication that the officers had discussed the case. The district court did not abuse its discretion in prohibiting further cross-examination.[6]
c. Other Witnesses
Each time a Government witness testified about the conspiracy without mentioning Reep, Reep’s counsel cross-examined the witness about the witness’ lack of knowledge of Reep’s involvement. After several of these instances, the district court concluded that such examination was beyond the scope of direct, and refused to allow Reep’s counsel to continue in this manner.
This ruling was not an abuse of discretion. Nothing precluded Reep’s counsel from arguing to the jury that witnesses knowledgeable about the conspiracy had not identified Reep. He did not need to cross-examine such witnesses in order to make this point.
*268 3.
Reep next maintains that he was denied a fair trial by the excessive interference of the district court. For example, with respect to Reep’s cross-examination of Moore, Jr., Reep contends that “[o]n at least fourteen(14) occasions ... the district court interrupted counsel’s cross-examination sua sponte and without government-initiated objection.” Br. of Appellants at 51 (July 23, 2004). Reep maintains that on these occasions counsel was “unfairly rebuk[ed]” and “chid[ed].” Id. Reep also maintains that the district court should not have intervened in counsel’s questioning of Reep’s expert witness. When, as here, the defendant objects to interference by the district court, review is for abuse of discretion.[7] U.S. v. Castner, 50 F.3d 1267, 1272 (4th Cir.1995).
Rule 614(b) of the Federal Rules of Evidence provides that a district court may interrogate witnesses called by the parties. Additionally, the court is required to “exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence.” Fed.R.Evid. 611(a). The court must exercise this control in order to “make the interrogation and presentation effective for the ascertainment of the truth” and to “avoid needless consumption of time.” Id.; see id. (providing that control also may be exercised to “protect witnesses from harassment or undue embarrassment”). Nevertheless, it is critically important that the court “retain the general atmosphere of impartiality required of a fair tribunal.” U.S. v. Godwin, 272 F.3d 659, 678 (4th Cir.2001) (internal quotation marks omitted). When the district court oversteps its bounds to the prejudice of the defendant, a violation of due process has occurred. Id. at 679.
a. Cross-examination of Moore, Jr.
Reep first complains of the manner in which the district court intervened in his counsel’s cross-examination of Moore, Jr. On several occasions, the district court interrupted cross-examination — e.g., by admonishing counsel that a question had been asked and answered. We have carefully reviewed the transcript, and we find nothing improper in the actions of the court. Counsel’s cross-examination of Moore, Jr. was repetitive in the extreme, and the district court was well within its discretion to attempt to curb counsel’s tendency to ask the same question over and over.
b. Examination of Pharmacologist
Reep called a professor of pharmacology, Dr. William Cooke, as an expert regarding the drugs Government witness Roberson was taking and their potential effect. After listing the psyehoactive drugs Roberson was taking, Dr. Cooke testified that taking the drugs in therapeutic dosages could result in confusion, decreased reasoning capacity, and short-term memory loss. After cross-examination by the Government, the district court engaged in the following colloquy with Dr. Cooke:
THE COURT: ... [A]re these compounds used to treat people suffering from bipolar disease?
THE WITNESS: They can be used for that purpose, yes.
*269 THE COURT: And when these particular drugs are used, psychiatrists are trained to prescribe these drugs in the appropriate dosage; is that correct?
THE WITNESS: Yes. From experience, that’s right.
THE COURT: And the psychiatrist not only prescribed these drugs, but they are required to monitor these drugs to be sure that they are having the effect that they prescribed them for in the first place; is that correct?
THE WITNESS: That would be the ideal circumstance, yes.
J.A. 2190. On redirect, Reep’s counsel established that monitoring of the patient does not necessarily mean that the patient will not suffer the cognitive effects described in Dr. Cooke’s direct testimony.
Reep complains that the questioning by the district court blunted Dr. Cooke’s testimony by making the jury think that monitoring would avoid any adverse effects on Roberson’s memory. To the extent this is true, however, Reep’s counsel established on redirect that memory loss could occur even with physician monitoring. Additionally, Roberson’s difficulties with his memory were evident from his testimony for the Government, and were further illuminated by counsel’s extensive cross-examination.
c. Cumulative Effect
Reep also maintains that even if the district court did not abuse its discretion in any particular instance, he was prejudiced by the cumulative effect of the interventions by the court. Any such cumulative effect, however, was ameliorated by the instructions to the jury. In its pretrial instructions, the district court informed the jury,
[I]t is sometimes the duty of the Court to admonish or warn an attorney who out of zeal for his or her cause does something which is not in keeping with the rules of evidence or procedure. If this should happen, do not permit this to have any effect on your evaluation of the merits of any evidence that comes before you.
Id. at 384. Additionally, during the jury charge, the court reminded the jurors that
it is the duty of the Court to admonish an attorney who out of zeal for his or her cause does something which the Court believes is not in keeping with the Rules of Evidence or Procedure. You are ... to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.
Id. at 2373-74. Jurors are presumed to adhere to cautionary instructions issued by the district court. U.S. v. Abdullah, 162 F.3d 897, 904 (6th Cir.1998).
4.
Reep’s counsel began presentation of Reep’s case on the afternoon of the seventh day of trial. After counsel had presented several witnesses, he informed the court that he had eight more witnesses; counsel stated, “I don’t think there will be any problem finishing today.” J.A. 2093. After Reep’s counsel had presented five more witnesses, he represented that he had three remaining; further discussion with the court reduced this number to two. Counsel stated, “The last witness I have is ... Dr. Cooke.” Id. at 2170. Following Dr. Cooke’s testimony, however, counsel informed the court that he needed to “think about” presenting “one or two” more witnesses before he was prepared to rest. Id. at 2194. The court insisted that counsel decide immediately whether he would present additional witnesses; after counsel declined to do so, the court declared that Reep’s case was rested. Reep appeals this ruling as an abuse of discretion, see U.S. v. Janati, 374 F.3d 263, 273- *270 74 (4th Cir.2004), arguing that counsel should have been allowed to consider the matter during the evening recess and rest or present additional witnesses the following morning.[8]
We conclude that there was no abuse of discretion here. Reep’s counsel repeatedly and unequivocally stated that he did not plan to call any witnesses after Dr. Cooke. In light of these representations, and given that the court day was not yet finished, it was not improper for the district court to insist that Reep either present additional witnesses at that time or rest his case. Reep’s complaint that the Government was treated with more deference is unavailing. After the Government completed its case in chief, the district court allowed the Government to delay the formal act of resting its case to the following morning so that the Government could ensure that its exhibits were in order. The Government made clear that it was willing to rest its case that afternoon, however, and did not indicate a desire to consider calling additional witnesses. Thus, Reep was not treated unfairly in comparison to the treatment the Government received.
5.
During his closing argument, Reep’s counsel gave the jury four definitions of reasonable doubt. During the fourth definition, the district court interjected, saying, “I hate to interrupt you, but not even the Court is permitted to define reasonable doubt in the Fourth Circuit for the jury, so, respectfully, do not attempt to define it for them.” J.A. 2277. The court then referred to counsel’s definition of reasonable doubt while instructing the jury:
Now, ladies and gentlemen, let me say one more word about reasonable doubt. You’ve heard the concept of reasonable doubt. During ■ the closing arguments [counsel for Reep] attempted to define the word reasonable doubt. The law for the Court is simple. The Court is not permitted to attempt to define the word reasonable doubt.... And that is because the courts have found that the definition is a selfevident definition and there is no better way of explaining the concept. All efforts to explain reasonable doubt simply lead[ ] to more confusion. So you’re not bound to accept [counsel’s] definitions of reasonable doubt. So not even the Court is going to attempt to give you that definition. So we’re telling you to rely on your reasonable understanding of the concept of the word reasonable doubt. It’s a selfevident definition.
Id. at 2338-39. Reep now argues that the district court abused its discretion in interrupting closing argument and in instructing the jury that the argument was improper. See U.S. v. Patterson, 150 F.3d 382, 389 (4th Cir.1998) (stating standard of review).
“It is well settled in this circuit that a district court should not attempt to define the term ‘reasonable doubt’ in a jury instruction absent a specific request for such a definition from the jury.” U.S. v. Oriakhi, 57 F.3d 1290, 1300 (4th Cir.1995). A district court may also restrict counsel from defining the phrase. Patterson, 150 F.3d at 389. Here, the district court allowed counsel to define reasonable doubt three times, prohibiting only the *271 presentation of a fourth definition. There was no abuse of discretion.
III.
Having concluded that Appellants’ convictions should be affirmed, we now turn to their challenges to their sentences. Appellants argue that under United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the district court erred by imposing sentences that exceeded the maximum authorized by the jury verdict alone. Because Appellants did not raise this issue in the district court, our review is for plain error. See Fed.R.Crim.P. 52(b); Olano, 507 U.S. at 731-32, 113 S.Ct. 1770. To establish plain error, Appellants must show that an error occurred, that the error was plain, and that the error affected their substantial rights. Olano, 507 U.S. at 732, 113 S.Ct. 1770. If they can make such a showing, correction of the error remains within our discretion, which we “should not exercise ... unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.” Id. (alteration & internal quotation marks omitted).
A. Moore’s Sentence
As we recently held in United States v. Hughes, 401 F.3d 540, 547-49 (4th Cir.2005), a district court commits plain error that affects a defendant’s substantial rights when, operating under a pre-Booker mandatory guidelines regime, it imposes a sentence that exceeds the maximum guideline sentence authorized by the jury verdict alone. At first glance, it would appear that Moore has satisfied this standard. At sentencing, the district court found Moore responsible for 1,053,269 kilograms of marijuana, for a base offense level of 38. See U.S. Sentencing Guidelines Manual § 2Sl.l(a)(l) (2002) (directing that the offense level for money laundering is the offense level for the offense from which the laundered funds were derived); id. § 2Dl.l(c)(l) (providing that the base offense level for 30,000 kilograms or more of marijuana is 38); id. § 2D1.1, comment, (n.10) (drug equivalency table). The district court also assessed an additional ten offense levels, finding that Moore had a leadership role in the conspiracy, see U.S.S.G. § 3Bl.l(a), used a minor in the commission of the crime, see U.S.S.G. § 3B1.4, possessed a firearm in connection with the offense, see U.S.S.G. § 2Dl.l(b)(l), and was convicted under 18 U.S.C.A. § 1956, see U.S.S.G. § 2Sl.l(b)(2)(B). Moore’s total offense level of 48, combined with his criminal history category of III, yielded a guideline range of life imprisonment.[9]
In contrast, the special verdict returned by the jury — which included specific findings concerning drug quantity as to some counts — authorized a guideline range of 292-365 months. This sentencing range corresponds to a base offense level of 34 (based on drug quantity) plus the two-level enhancements for possession of a firearm and conviction under § 1956 (neither of which, the parties agree, required additional judicial fact finding), for a total offense level of 38, and Moore’s criminal history category of III. Because the life sentence imposed on Moore exceeds the maximum sentence authorized by the facts found by the jury alone, it would appear that Moore’s Sixth Amendment rights were violated. See Hughes, 401 F.3d at 547.
The Government maintains, however, that there is no Sixth Amendment violation because the drug quantities charged in the indictment correspond with a base offense level of 36. When the firearm and § 1956 *272 enhancements are added and combined with Moore’s criminal history category, the resulting guideline range is 360 months to life imprisonment. Thus, the Government argues, Moore’s life sentence does not exceed the maximum authorized by the facts found by the jury alone. See U.S. v. Evans, 416 F.3d 298, 300-01 (4th Cir.2005).
We might find the Government’s argument more persuasive if the district court had instructed the jury to determine Moore’s guilt as charged in the indictment, or had at least directed the attention of the jury to the amounts charged in the indictment. This did not occur, however. Rather, in instructing the jury on the elements of the drug offenses, -the district court made no reference at all to drug quantity. Moreover, when it instructed the jury regarding the quantities listed on the special verdict form as to some counts, the district court did not instruct the jury regarding the language of the indictment; it simply charged the jury that it was required to make findings beyond a reasonable doubt as to the quantities listed in the special verdict form. See J.A. 2349. These quantities corresponded to the various quantities set forth in 21 U.S.C.A. § 841 (West 1999 & Supp.2005), not to the indictment. In light of these facts, we cannot accept the Government’s argument that Moore’s convictions alone are sufficient to establish the absence of a Sixth Amendment violation.
Nevertheless, we decline, pursuant to Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), and United States v. Promise, 255 F.3d 150 (4th Cir.2001) (en banc), to notice the plain error established by Moore. In Johnson, the Supreme Court considered on plain error review a perjury conviction in which the element of materiality was found by a judge rather than by the jury. See Johnson, 520 U.S. at 463, 117 S.Ct. 1544. The Court ruled that the error was plain and assumed that it affected substantial rights. See id. at 468-69, 117 S.Ct. 1544. The Court declined to notice the error, however, because the evidence concerning the omitted element was “overwhelming” and “essentially uncontrovert-ed.” Id. at 470, 117 S.Ct. 1544 (internal quotation marks omitted). The Court reasoned that, under the circumstances, noticing the error would “seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings” because “[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.” Id. (internal quotation marks omitted).
In Promise, we refused to vacate the defendant’s sentence on plain error review despite the fact that the use of judge-made drug-quantity findings by the district court had created a Sixth Amendment violation. See Promise, 255 F.3d at 161-64. Following Johnson as well as similar circuit precedent, we reasoned that “[t]here simply can be no doubt that had the indictment included the [requisite drug quantity], the jury would have found Promise guilty beyond a reasonable doubt.” Id. at 164.
The reasoning of Johnson and Promise applies with equal force here. Even though the. Sixth Amendment required that the jury, rather than the trial judge, make the drug quantity findings that increased Moore’s sentence, the .evidence concerning drug quantity was overwhelming and uncontroverted, even at sentencing. And, while Moore challenged his guilt of the charged offenses, he did not maintain any challenge to the evidence concerning the quantity of drugs involved in the transactions to which various witnesses testified. There can be no question that the jury, having found that the offenses were committed, would have also deter *273 mined that the offenses involved the specific amounts charged in the indictment. Cf. United States v. Cotton, 535 U.S. 625, 632-34, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (declining to notice plain Fifth Amendment error on the basis that evidence concerning drug quantity was “overwhelming and essentially uncontroverted” (internal quotation marks omitted)). But see United States v. Davis, 407 F.3d 162, 164 & n. 3 (3d Cir.2005) (en banc) (suggesting, without discussing Johnson, that Sixth Amendment Booker violation should be noticed on plain error review even if evidence supporting judge-made findings was overwhelming and essentially uncon-troverted); United States v. Oliver, 397 F.3d 369, 380 n. 3 (6th Cir.2005) (declining to consider whether error should not be noticed on the basis of overwhelming and uncontroverted evidence; distinguishing Cotton). We therefore affirm Moore’s sentence.[10]
B. Smith’s Sentence
Smith argues that he was sentenced in violation of the Sixth Amendment because the jury was not required to make findings regarding the extent of his involvement in the conspiracy. He cor-rectly maintains that the Fourth Circuit has held that a defendant charged with conspiracy is entitled under the Sixth Amendment to a jury determination of the quantity of drugs attributable to him as an individual, rather than the quantity for which the conspiracy as a whole was responsible. See U.S. v. Collins, 415 F.3d 304, 311-14 (4th Cir.2005).
However, because Smith was sentenced as a career offender, his offense level was not based on the quantity of drugs attributable to him, but rather on the maximum sentence for the offense of conviction. See U.S.S.G. § 4Bl.l(b). As Smith acknowledges, the jury properly made a finding as to drug quantity with respect to Count 31 of the indictment, which charged him with possessing with the intent to distribute ten kilograms of cocaine. Because the maximum sentence for this offense is life imprisonment, see 21 U.S.C.A. § 841(b)(1)(A), the corresponding offense level is 37. This, combined with the mandatory Criminal History Category of VI, produced a guideline range of 360-life. The district court sentenced Smith to 360 months. Therefore, because Smith’s sentence did not exceed the maximum authorized based *274 on the facts charged in the indictment and found by the jury beyond a reasonable doubt, his Sixth Amendment rights were not violated.
Smith also challenges his sentence under Booker. However, Smith’s entire argument consists of the following sentence: “Smith’s sentence exceeded the maximum sentence then authorized by the facts found by the jury alone, in violation of Booker.” Supp. Br. of Appellant 3 (Aug. 30, 2005). This argument does not comply with Rule 28(a)(9)(A) of the Federal Rules of Appellate Procedure, which requires the argument section of an appellant’s brief to contain “appellant’s contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.” Thus, we deem Smith to have abandoned this claim. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n. 6 (4th Cir.1999).
Even if properly made, Smith’s claim would fail. In United States v. Collins, 412 F.3d 515, 522-23 (4th Cir.2005), we held that a career offender sentence does not violate the Sixth Amendment when it is clear from the face of the record that the qualifying convictions were felonies that were crimes of violence or controlled substance offenses. Here, Smith had two convictions for aggravated assault and one for selling narcotics. Smith does not dispute that the district court did not need to make additional findings in order to determine that these were qualifying convictions under the career offender guideline. Accordingly, there was no Sixth Amendment violation in sentencing Smith as a career offender.
C. Reep’s Sentence
Reep, like Smith, was sentenced as a career offender. He argues that the district court erred in sentencing him pursuant to a mandatory guidelines scheme. This was, as we have previously held, plain error. U.S. v. White, 405 F.3d 208, 216-17 (4th Cir.), cert. denied, — U.S.-, 126 S.Ct. 668, 163 L.Ed.2d 539 (2005). However, Reep must also demonstrate prejudice by showing “that the treatment of the guidelines as mandatory caused the district court to impose a longer sentence than it otherwise would have.” Id. at 224. Reep cannot do so. At sentencing, the district court commented that the sentence of 360 months “is appropriate[ ][g]iven your background and the nature of the offense.” J.A. 2514. This statement certainly does not support a claim that the district court would have imposed a lesser sentence in the exercise of its discretion. We therefore affirm Reep’s sentence.
IV.
For the reasons set forth above, we affirm Appellants’ convictions and sentences.

AFFIRMED

. Although we have considered all of Appellants' claims, some are so clearly without" merit that they do not warrant discussion in this opinion. Any claim not discussed in the opinion, including those raised in pro se filings by Appellants, is summarily rejected.

. Citations in this opinion are according to ALWD & Darby Dickerson, ALWD Citation Manual (2d ed., Aspen Publishers 2003).

. Moore also maintains that the Government's statements "impermissibly comment on the Appellant's right to put the Government to its burden of proof, and not testify on his own behalf.” Id. We conclude that the Government's argument cannot fairly be construed as commenting on these matters.

. Smith raised one challenge to his conviction, which we have considered and rejected. See supra n. 1.

. We will assume arguendo that discussion of the case by the officers would have violated the sequestration order entered by the district court. See U.S. v. Sepulveda, 15 F.3d 1161, 1175-76 (1st Cir.1993) (explaining that Federal Rule of Evidence 615 governs only exclusion of witnesses from the courtroom; it is within the discretion of the trial court to order additional restrictions such as prohibiting witnesses from discussing the case outside the courtroom).

. Reep also challenges the following cautionary instruction, which the court gave to the jury after Reep questioned Officer Poch regarding his conversation with Officer Eck-stein: "Ladies and gentlemen, one cautionary instruction. There’s been some references to Officer Eckstein and this witness. There’s no evidence before this court of any witness collusion or tampering between Officer Eckstein and this officer leaving the stand.” J.A. 1417. Because there was no evidence to support a sequestration order violation, this instruction was proper to avoid confusion. Cf. Anderson v. Griffin, 397 F.3d 515, 520 (7th Cir.2005) (identifying cautionary instructions as one means of avoiding juror confusion).

. Although Reep’s counsel did not object every time the district court interjected a question or a comment, counsel repeatedly made clear during sidebar discussions that he fell he was being treated unfairly by the court. Cf. Fed.R.Evid. 614(c) (noting that an objection to interrogation of witnesses by the court can be made at the time of questioning "or at the next available opportunity when the jury is not present”).

. Reep’s attorney challenges the $1,000 sanction imposed by the district court after he continued to dispute the matter. This is not the proper forum for such a challenge, however. See Rogers v. Natl. Union Fire Ins. Co., 864 F.2d 557, 559-60 (7th Cir.1988) (holding that an attorney who is sanctioned must appeal in his own name in order to create appellate jurisdiction over the sanctions order).

. Moore does not challenge his criminal his-toiy category.

. The dissent asserts that "[e]ssentially, Hughes and its progeny hold that all ... Booker Sixth Amendment errors require a remand in those instances where it is unclear what sentence the district judge would have imposed had the guidelines been advisory.” Post, at 33. This is incorrect. Although we indicated in Hughes that we might not notice a Sixth Amendment error if the record clearly demonstrated that the district court would have imposed the same sentence had it treated the guidelines as advisory, see Hughes, 401 F.3d at 555, this court has never held — in Hughes or any subsequent case — that this would be the only circumstance under which we might decline to notice such an error.
Similarly unavailing is the dissent's observation that no Fourth Circuit decision noticing a plain Sixth Amendment Booker error has explicitly considered whether the evidence was overwhelming and essentially un-controverted. We simply cannot take silence as an indication that they decided such an inquiry was improper. Even if that is one possible inference, it is equally plausible that the issue was not presented or that the evidence was not overwhelming or uncontrovert-ed. Nor is it relevant that in United States v. Cardwell, 433 F.3d 378, 392-93 (4th Cir.2005), the panel noticed a plain Sixth Amendment Booker error without determining whether the "overwhelming” and "essentially uncontroverted” nature of the evidence warranted refusing to notice the error. The Card-well panel eschewed this inquiry — despite its strength "both in the abstract and on the facts of this case” — only because the Government "expressly abandoned” the argument. Id. at 392 n. 7.