UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4629

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DARRY WAYNE HANNA,

Defendant - Appellant.

Appeal from the United States District Court for the District of
South Carolina, at Florence.  Terry L. Wooten, District Judge.
(4:06-cr-00828-TLW)

Argued: September 25, 2009          Decided: December 2, 2009

Before WILKINSON and DUNCAN, Circuit Judges, and Damon J. KEITH,
Senior Circuit Judge of the United States Court of Appeals for
the Sixth Circuit, sitting by designation.

Affirmed by unpublished opinion.  Senior Judge Keith wrote the
opinion, in which Judge Wilkinson and Judge Duncan joined.

**ARGUED:** Cameron Bruce Littlejohn, Jr., Columbia, South Carolina,
for Appellant.  Thomas Ernest Booth, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:** W. Walter
Wilkins, III, United States Attorney, Columbia, South Carolina,
Rose Mary Parham, Assistant United States Attorney, OFFICE OF
THE UNITED STATES ATTORNEY, Florence, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit.

KEITH, Senior Circuit Judge:

After a jury trial, Appellant Darry Wayne Hanna ("Darry") was convicted of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349; 19 counts of mail fraud, in violation of 18 U.S.C. § 1341; and two counts of wire fraud, in violation of 18 U.S.C. § 1343. The district court sentenced him to 440 years of imprisonment. He now appeals his conviction on grounds that the district court erred: (1) in admitting the extrajudicial statements of decedent Teresa Hanna ("Teresa"); and (2) in admitting a letter written by Hanna's brother, decedent Davy Hanna ("Davy"). For the reasons that follow, we affirm the district court's evidentiary findings.

I.

This case arises from the murder of Teresa Hanna, and fraudulent attempts to collect on her life insurance policies after her death. Teresa was married to Darry's brother, Davy Hanna. In the early 2000s, serious discord arose between Davy and Teresa Hanna as a result of their marital problems. Both Davy and Teresa made statements to this effect on numerous occasions, and Teresa in particular had informed friends and acquaintances of her fear that Davy was trying to kill her. Teresa also told her friends that she thought, when she had fallen off of the side of a boat a few days earlier, Davy would

3

not have rescued her from the water if there had not been another boat nearby. On another occasion, she told a friend that Davy had once said that if he ever wanted to get rid of her, all it would take was a six pack of beer.

In the early morning of August 15, 2003 Teresa's dead body was discovered lying in her driveway. Teresa had tragically been shot five times with a .22 caliber rifle and had been killed. Ronnie Hanna, Davy and Darry Hannah's father, discovered Teresa's body and called 911. Shortly thereafter, paramedics and state criminal investigators arrived at the scene. When Davy arrived, he immediately began to blame the murder on Tom Redmond, Teresa's employer.

In August and September 2003, Davy attempted to collect on Teresa's multiple life insurance policies using the U.S. Postal Service. The insurance companies replied to Davy, and on September 26 and October 9, Davy called Reliance and Provident, two of the insurance companies, regarding the status of his claims. In September 2003, Carolina Credit Union paid off the loan on Davy's truck from the proceeds of Teresa's life insurance policy.

On October 30, 2003, Davy and his brother Darry were arrested and charged with Teresa's murder. On November 22, 2003, while both Davy and Darry were in jail, Davy called Darry's girlfriend and told her that he would deliver a letter

4

to Darry in a box of soap. The next day, a jailer seized the box of soap and Davy's letter. In the letter, entitled "Our Way Out," Davy indicated that he was going to commit suicide and urged Darry to do the same. Davy also wrote that each of them should write letters exculpating the other and accusing Tom Redmond of having murdered Teresa. On October 20, 2004, Darry and Davy were formally charged with the murder of Teresa Hanna. In August 2005, they were acquitted in state court. On August 9, 2006, Darry and Davy were indicted on nineteen federal counts of mail fraud, in violation of 18 U.S.C. § 1341; two counts of federal wire fraud, in violation of 18 U.S.C. § 1343; and one federal count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. These counts charged Darry with participating in the murder of Teresa Hanna in order to recover proceeds from her life insurance policies.

Davy committed suicide on August 26, 2006, after his subsequent detention on federal mail and wire fraud charges. In the fall of 2006, while incarcerated on the same charges as his brother, Darry made admissions to several of his fellow inmates. Darry stated that he had agreed to help Davy murder Teresa for thirty percent of the insurance proceeds, and Darry also complained that Davy should have exculpated Darry in a letter shortly before committing suicide.

5

On February 23, 2007, following a jury trial in the United States District Court for the District of South Carolina, Darry was convicted on all counts. He was sentenced to a total of 440 years imprisonment on May 31, 2007. This appeal followed.

## II.

This Court reviews a district court's admissions of an extrajudicial statement under the abuse of discretion standard. See U.S. v. Vidacak, 553 F.3d 344, 348 (4th Cir. 2009). Also, "[U]nder the abuse of discretion standard, this Court may not substitute its judgment for that of the district court; rather, [it] must determine whether the district court's exercise of discretion, considering the law and the facts, was arbitrary or capricious." U.S. v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995). Moreover, this Court has held that "a district court's evidentiary rulings are entitled to substantial deference, because a district court is much closer than a court of appeals to the 'pulse of the trial.'" U.S. v. Russell, 971 F.2d 1098, 1104 (4th Cir. 1992).

If the district court abuses its discretion when making an evidentiary finding, this Court must determine whether the error was harmless. Fed. R. Crim. P. 52(a). Under this rule, if any error is found, "[W]e need only be able to say with fair assurance, after pondering all that happened without stripping

6

the erroneous action from the whole, that the judgment was not substantially swayed by the error." U.S. v. Heater, 63 F.3d 311, 325 (4th Cir. 1995)(citing U.S. v. Nyman, 649 F.2d 208, 211 (4th Cir. 1980)).

III.

It is undisputed that the district court erred in admitting Teresa's extrajudicial statements under the forfeiture-by-wrongdoing exception to the hearsay rule. See Fed. R. Evid. 804(b)(6). Rule 804(b)(6) admits a statement if it is "offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." Id. In Giles v. California, 128 S. Ct. 2678 (2008), decided after the district court's decision in this case, the Supreme Court clarified that the forfeiture-by-wrongdoing exception applies only when a defendant engages in wrongdoing intended to make a potential declarant unavailable as a witness. Id. at 2685. In other words, it is not enough, for example, that a defendant murdered a victim with the effect of preventing her testimony; rather, the defendant must have murdered the victim with the intent of preventing her testimony. Id. In this case, it is undisputed that Darry allegedly killed Teresa for the insurance proceeds and not with the purpose of making her unavailable to testify. Accordingly, the contested

7

statements cannot be admitted under the forfeiture-by-wrongdoing exception.

However, this Court follows the settled rule that "in reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'" S.E.C. v. Chenery, 318 U.S. 80, 88 (1943) (citing Helvering v. Gowran, 302 U.S. 238, 245 (1937)); U.S. v. Dunnock, 295 F.3d 431 (4th Cir. 2002). Teresa's stated fear that Davy was trying to kill her, and her statements relating to the dismay she felt stemming from the negative tone of their marriage, were admissible on other grounds. Because of this, no reversible error exists here.

Appellant argues that Teresa's statements were barred under the Confrontation Clause of the United States Constitution. However, the Supreme Court has ruled that hearsay is not barred by the Confrontation Clause when the declarant fails to "bear testimony." Crawford v. Washington, 541 U.S. 36, 51 (2004). In Crawford, the Supreme Court acknowledged that a "person who makes a casual remark to an acquaintance," such as Teresa's remarks to her friends and acquaintances, does not "bear testimony" under the Confrontation Clause. Id. Crawford's definition of testimony was affirmed in Davis v. Washington, and most recently in Giles, which held that "statements to friends and neighbors" are not testimonial under the Confrontation

8

Clause. _Giles_, 128 S. Ct. at 2693; _Davis v. Washington_, 547 U.S. 813 (2006). This definition has also been upheld in this Circuit. _See_ _U.S. v. Udeozor_, 515 F.3d 260, 268-270 (4th Cir. 2008)(citing and adhering to _Davis_ and _Crawford's_ definition of testimony).

Moreover, Teresa's most probative statements are admissible under the state of mind exception to the hearsay rule. _See_ Fed. R. Evid. 803(3). This rule admits a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health). . ." _Id._ While not all of Teresa's statements would be admissible under this evidentiary rule, Teresa's most probative statements to her friends were expressions of the general fear and distress she felt at the time as a result of her relationship with Davy. For example, a friend testified that Teresa was "depressed and visibly upset" during lunch one day soon before she was killed. This same friend also testified of Teresa that, during this same lunch, "she was crying, and she was shaking. She was just very scared acting." These statements would have been admissible under Rule 803(3).

Teresa's statements regarding the boating accident, while not admissible under Rule 803(3), appear to have been rendered harmless by the fact that Aftene Roberts, one of Teresa's

9

friends, corroborated Teresa's statements separately based on her own firsthand experience of the accident. However, the statement in which Teresa told her friend about Davy's six pack of beer comment was admitted erroneously, and does not appear to have been properly admissible under the state of mind exception or on any other grounds. Whether admission of this statement was harmless error turns on a larger analysis of the case as a whole.

Under the Federal Rules, "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(a). When applying this non-constitutional harmless error test, this Court has held that "[e]vidence erroneously admitted will be deemed harmless if a reviewing court is able to 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" U.S. v. Abu Ali, 528 F.3d 210, 231 (4th Cir. 2008) (citing Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

Ultimately, the government submitted all of Teresa's statements, including her recount of Davy's six pack of beer statement, to establish the existence of marital discord between Teresa and Davy. This would then serve to help establish the existence of a motive for Davy to kill his wife. But in this

10

case, the government had already accumulated a great deal of evidence implicating Davy's motive to kill Teresa for the insurance proceeds, as well as evidence pointing to his subsequent guilty conscience. This evidence includes Davy's infidelity, his false statement that he did not have marital problems, his false statements to the police that he did not have any life insurance on Teresa, his failure to mention that he had a second .22 rifle, and the fact that recently fired .22 rifle casings that matched those found near Teresa's body were found behind a shed in Davy's yard, and even Davy's subsequent suicide. Based on this great accumulation of evidence, and in light of the deferential abuse of discretion standard with which we examine evidentiary admissions of this type, and the likelihood that Teresa's most probative statements would be admissible on other grounds, we can say, with fair assurance, that the jury's judgment was not substantially swayed by the admission of Teresa's statements. The error that resulted in the admission of these statements was harmless, and no abuse of discretion exists here.

IV.

Appellant also argues that the court erred in admitting statements from Davy's "Our Way Out" letter as co-conspirator's statements made in furtherance of the conspiracy. See U.S. v.

11

Neal, 78 F.3d 901, 905 (4th Cir. 1996).  Appellant argues that the conspiracy that he was charged with "was effectively snuffed out by the arrest of the defendants on the murder charge" on October 30, 2003.  He goes on to cite the Fifth Circuit's observation that "a defendant's participation in a conspiracy normally ends when that person is arrested for his role in the conspiracy."  U.S. v. Dunn, 775 F.2d 604, 607 (5th Cir. 1985).  Under the defendant's theory, when Davy composed "Our Way Out" on November 21, 2003, the conspiracy no longer existed, so Rule 801(d)(2)(E) could not make the letter admissible.

Appellee argues that the evidence is relevant non-hearsay because it was not admitted for the truth of the matter asserted and was relevant to show the existence of a conspiracy between the two men in 2003.  Appellee does not, however, argue that the statements contained in the letter are admissible as statements of a co-conspirator.  Upon further review, the record shows that the District Court admitted the statements not as statements of a co-conspirator, but on other grounds as explained below.

A statement is nonhearsay if it is offered against the defendant as a statement by a co-conspirator during the course of and in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E).  Here, the record does not indicate that the District Court found that any of the statements were admissible under Rule 801(d)(2)(E).  The court stated that, although

12

concealment might have been part of the conspiracy, "statements in the letter would not further the conspiracy" because the goals of the conspiracy could not be achieved if the double-suicide proposed by the letter occurred. (J.A. 1313-1314.) The court later explained that it redacted certain statements from the letter because "those statements are not co-conspirator's statements, or if they are co-conspirator's statements during the conspiracy, they are not in furtherance of the conspiracy, and[,] therefore, they are hearsay and will not be admitted." Id. at 1316. A statement by a co-conspirator is made "'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." United States v. Smith, 441 F.3d 254, 262 (4th Cir. 2006). As the District Court noted, under the facts before us, Davy and Darry's goal of obtaining the insurance proceeds would have been rendered moot by the proposed double-suicide, as neither of them would have been available to receive the insurance proceeds.

However, the court found that the unredacted statements in the letter were admissible, not for their truth, but rather as evidence of the conspiracy. (J.A. at 1314.) It also found that the statements were admissible to show Davy's state of mind. Id.

13

The statements contained in the letter fit within the confines of Federal Rule of Evidence 803(3), which states that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition [such] as intent, plan, motive, design, mental feeling, pain, and bodily health" is not excludable as hearsay.  Fed. R. Evid. 803(3).  In this case, the letter shows that Davy had a plan for both he and Darry to commit suicide and for them both to frame Redmond for the crime by authoring corresponding suicide notes.  Such statements show Davy's apparent mental feeling that the brothers were in the same situation with regard to the crime and that they therefore had reason to react in the same way.  This evidence is relevant to show the brothers' conspiratorial relationship regarding the crime.

This Court has found that circumstantial evidence of the existence of a relationship is particularly valuable where the crime alleged is a conspiracy.  In United States v. Burgos, the court explained that "by its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of [] an agreement."  United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996).  Therefore, "a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced."  Id.  The Burgos court further explained that "[c]ircumstantial evidence

14

tending to prove a conspiracy may consist of a defendant's 'relationship with other members of the conspiracy.'" Id. (citing United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984)). Here, Davy's statements are relevant to show the previous existence of the conspiracy based on the apparent nature of the relationship between the brothers as it pertained to the crime.

Furthermore, the introduction of the statements did not violate Darry's rights under the confrontation clause because the statements were not testimonial. Testimonial statements serve the "primary purpose . . . [of] establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Davis v. Washington, 547 U.S. 813, 822 (2006). The statements here were not testimonial because they did not concern past events. Rather, they concerned plans for future action to be taken by the declarant and his co-defendant. The Eighth Circuit case of United States v. Spotted Elk, 548 F.3d 641 (8th Cir. 2008), is illustrative on this issue. There, the appellant's co-defendant testified at trial that a third co-defendant asked her to fabricate a story regarding their criminal activities and to "keep it" between all the co-defendants, including the appellant. Id. at 662. The court found that the statements were not testimonial because they were not "statement[s] of fact, but a proposal of a future course of

15

action . . . uttered not to any official, but to a co-defendant." Id. That rationale applies in this case with equal force.

Accordingly, the statements contained in the "Our Way Out" letter were admissible to show Davy's state of mind, relevant to the relationship between the brothers, and not testimonial. Furthermore, any error in admitting the statements would be harmless in light of the circumstantial evidence against Darry and Darry's statements to several of his prison inmates regarding the existence of the conspiracy.

It is well established that a "presumption of correctness" is attached to the trial judge's evidentiary findings in a jury trial such as this, and the "the likelihood that the appellate court will rely on the presumption tends to increase when trial judges have lived with the controversy for weeks or months instead of just a few hours." Bose Corp v. Consumers Union of U.S., Inc., 466 U.S. 485, 500 (1984). The district court heard extensive argument on the issue of the admission of this letter—it occupied nearly 150 pages of discussion in the trial transcript. (J.A. 79A-79TT, 838-873, 1270-1302, 1306-1328.) The proper and thorough consideration of this issue included an extensive discussion of both the facts and the law. The decision to admit this evidence was not an abuse of discretion.

16

V.

For the aforementioned reasons, we affirm the district court's evidentiary findings and affirm Darry's conviction.

<u>AFFIRMED</u>